Good afternoon. We will hear arguments this afternoon in Mordi v. Zeigler, and Mr. Clapp, whenever you're ready. Good afternoon. May it please the Court, this case presents a question that this Court has already answered on multiple occasions, including in its Rollins decision and its Reynolds decision. Before you get into that question, would you agree with me that Heck v. Humphrey and that whole line of cases, Wallace, etc., don't describe the jurisdictional limitation on anything? They're really about sorting out which statute applies at which time. I agree, Your Honor. The purpose of Heck and the other cases that come out of it are trying to figure out whether a case ought really be brought under habeas, and if it's sort of a habeas case in the cloak of a Section 1983 action. Right. No one has made anything of this, except I'm very puzzled by it. Reading the facts of the stop that happens on the highway, it seems to me pretty clear that the police officer said that the reason he stops the car is because there's no license plate on the front, and that is not consistent with Illinois law, and I don't understand Mr. Mordi to be contesting that. Mr. Mordi would disagree that there was no license plate on the front of the car, not to sort of nitpick here. There was a license plate on the front of the car. The issue was that it was not on the bumper. Well, it wasn't on the bumper. It was sitting there inside the car on the dashboard. Yes, Your Honor. So a police officer sitting in his squad car, I gather, in the opposite direction from where the car was coming, wouldn't be able to see it. That's not where the law says it's supposed to be, right? Illinois happens to have a two license plate rule, unlike some states. The reason I'm asking about that is if, when all is said and done, the police had an objective reason for stopping this car, then I don't know why their subjective motivation matters, and I'm not sure that we need to reach all of these heck against Humphrey, etc. issues that you're talking about. Well, as an initial matter, none of that has been addressed by the district court below or the parties here. So to the extent the court is leaning that direction, I would at least ask for the opportunity to brief it. However, going beyond that, Mr. Mordi is alleging much more than simply an improper initial traffic stop. He is alleging Fourth Amendment violations not only for the traffic stop itself, but for the unreasonable extension of time in that stop, search around the stop as well. And he alleges that basically from the initiation of the stop through the time of his arrest, there was a series of unconstitutional searches and seizures. But it's a pretty short period of time, at least as I can tell from the record. It's around 1.20 p.m. that Trooper Ziegler pulls up behind him, and by 1.48 they've found the cocaine. Does that sound right to you? I can't speak to those exact times, but I think we're talking certainly less than an hour. And it looks like maybe less than half an hour. I have no reason to doubt that without looking back at the record in front of me. What remedy is Mr. Mordi looking for? If this went the way that you want it to go, and you succeed in distinguishing the Fourth Amendment violation from the facts to which he pleaded guilty, and we leave the conviction all by itself and all of that, what remedy do you see as appropriate? Well, since we're on a motion to dismiss, we have his complaint. And Mr. Mordi alleges that he's entitled to various damages, compensatory, punitive, otherwise. Now, going back to Your Honor's initial point about the precise facts and circumstances and the question of suspicion and probable cause of the arrest, as well as his damages. When this case or if this case goes back below, Mr. Mordi will have to deal with those issues. And I think he probably can deal with those issues. Because, of course, you would agree that he can't get any remedy that would undermine the validity of the conviction. That's right, Your Honor. And so there was some briefing below outside the context of this Fourth Amendment claim, dealing with what remedies would be available in the context of some of the claims that had survived the initial motion to dismiss. And the district court did find that there was a viable path to some relief there. And I think that rationale would probably hold here as well. Clearly, he's not going to get any recovery that contradicts his conviction. That's not to say that he can't recover anything at all. Okay. Turning to the heck issues. Here, we have a person, Mr. Mordi, who has – he's currently serving time. He pled guilty to possession of a drug offense. And he's bringing these Fourth Amendment claims against the officers who arrested him. And is his primary complaint this racial profiling concept? I don't know that I can categorize it as primary and secondary, Your Honor. But what he's bringing forth, certainly the primary example in his complaint is some sort of profiling based on race, age, and style of dress. I think just to put it – he doesn't use these words, but to sum it up, he's a young black man wearing certain kind of urban style clothing, and he alleges that that is the basis for at least some of the Fourth Amendment violations. He also goes on to say that after he's been stopped, he's sitting in the police car, and the officer explicitly tells him there's no issue here, there's nothing I can do about these issues, and gives him – This is about this marijuana warrant from the other county? Yes. There's no cooperation that exists among counties? You just sort of let people go if it's a warrant from a different county? I can't speak to the issues of Illinois law there. Just as the facts were pled, the officer told Mr. Mordi he didn't see any issues. At that point, he asked him to sit tight and wait, and he had to wait for a canine search. So during that period of time, he'll be included in these allegations, and there he says all he's going on is a hunch, and that's improper under the Fourth Amendment. So in addition to the race, age, style, and dress, he also alleges this hunch is what's really driving the officer, not any actual suspicion or probable cause for the actions that occurred after that. So you think that only after he says everything is good, I'm going to give you a warning, Mordi signs the warning, then even four minutes to wait for the dog is too long? You know, it's a question that I think is worth looking at this court's precedent and having the parties brief if it's something that this panel is interested in. Because as I stand here today, given that the court below didn't look at it, none of the parties raised it, the state certainly hasn't raised it, it's not something that I would want to give Mr. Mordi's position on because we don't know it and I haven't briefed it. Okay. The state spends quite a bit of time talking about other facts that Mr. Mordi included in his complaint that it thinks takes him out of HECC. Maybe you can talk about that. Yes, Your Honor. Very briefly since you're getting your rebuttal time. Ultimately, the defendant's position boils down to this, that the Supreme Court didn't mean what it actually said in the HECC decision. HECC made a very clear distinguishing line between what cases are barred and what cases are not. And that line is what does success on the merits, what does judgment in favor of the plaintiff actually imply about the underlying conviction. Their argument that this court, through which O'Connor has somehow moved that boundary to bring in more barred claims through any random fact in a complaint, even if it has nothing to do with the operative claim for relief, is just without support. And so this court should not entertain that idea of the law. And I would like to preserve the remainder of my time for rebuttal. Sure. Thank you. That's fine. Thank you. Ms. Welsh. Good afternoon, Your Honors. May it please the Court, I'm Mary Welsh. I'm here on behalf of the defendants. If plaintiff is correct, then that means that a coro was wrongly decided, because this case is just like a coro. No, I don't think that's right, really. You know, and it places such weight on the pleadings, it's quite inconsistent with the normal rule that you don't have to plead legal theories. Pro se people often tell you the story of their life in pleadings, and there's a lot that you just disregard. It becomes, you know, goes by the wayside as the case becomes focused. Heck against Humphrey is about things that necessarily are inconsistent with an underlying conviction. And since Mr. Morty concedes that the conviction is there, he pleads guilty, nothing that is going to happen here is going to undermine that. Well, Your Honor, that's not correct under McCann and O'Carroll. Under those cases, those cases stand for the proposition that even if your claim is not heck barred, it's a normal Fourth Amendment false arrest claim, say, you know, there wasn't reasonable suspicion, whatever, that that claim accrues, you know, long before your conviction, so you don't have to worry about undoing your conviction. But if you then additionally allege facts that, like the plaintiff in O'Carroll, who said even though his theory was, his Fourth Amendment theory was, they stole my gems, he kept insisting that he hadn't been selling drugs. And this court explained in O'Carroll that if he had made two different sorts of allegations, if he had said they stole my gems and I had drugs, or he had just said they stole my gems, then he would have escaped heck, but he didn't do that. But you're reading too much into it. O'Carroll is about the fact that in order to win the case, he has to prove something that's inconsistent with the underlying conviction. Well, no, Your Honor. That's different. Your Honor, that's not correct. He doesn't have to prove he didn't have the drugs in O'Carroll. All he had to prove was that they stole his gems. What he did was put that additional complaint in, and in the first, in O'Carroll 1, you know, there was an original O'Carroll decision, and then that decision was decided on preclusion grounds because of the conviction. But what happened was, and the court said, you know, we would have dismissed this under heck because he keeps saying, I didn't have any drugs. And so that's exactly what the plaintiff here said in his complaint. It doesn't matter, though. He's saying, what does that have to do with whether there's been racial profiling? There can be racial profiling if you have a car full of drugs, and there can be racial profiling if you have zero. It's completely irrelevant. That's exactly true. That's why it's not heck barred. No, Your Honor, that's why it would be heck barred if he didn't say in his complaint, just like the plaintiff in O'Carroll. Well, that's just a crazy theory. Well, Your Honor, I mean, obviously the court can overturn O'Carroll and the reasoning in McCann, but, you know, McCann explains that there is this additional gloss on heck in this circuit. There is an additional gloss insofar as if success on the new claim is necessarily inconsistent with the criminal conviction, then it's heck barred. Then you have to wait until the conviction has been overturned or otherwise, you know, changed. But necessarily you have to sue right away. And, you know, you pay the price basically under Wallace against Cato. You can't wait forever either. Right, of course. So it's some good, some bad. There's a sweet spot in there somewhere. But it's necessarily implied. And what happened in O'Carroll, and as McCann indicates too, when your story as the plaintiff, when your story, you know, includes allegations. No, you just changed what you were saying because the necessarily implies means the facts that are necessary to prove your claim. Mr. Morty was a pro se plaintiff who threw a lot into the complaint that probably didn't need to be there. But at this point, as I understand it, he has narrowed the claim to the kinds of racial profiling things that we're talking about, the Fourth Amendment. And it's troublesome. I think under the state's theory, there's really just never a Fourth Amendment claim that can be brought under 1983. Not true, Your Honor. Again, O'Carroll teaches us that the claim that you need to bring is either, in O'Carroll's case, they stole my gems. So if we gave Mr. Morty the chance to replead and he deleted all of the extraneous information from his complaint and he focused on the racial profiling, he's fine under your view. Well, if you could, but you can't. I mean, he never asked to replead. I mean, his theory is my complaint. I'm just saying that that's all that would be needed, right? I'm not saying he couldn't plead a valid Fourth Amendment claim that wasn't heck barred. And delete, just simply by deleting the stuff that the state says sweeps him under heck. And that's the same thing that happened in O'Carroll. O'Carroll explains, if the plaintiff had said either they stole my gems or they stole my gems and I had the drugs, those claims could have gone forward. Now, is the state relying in any way on the other theory? I mean, you don't say a word about the fact that maybe this stop on the highway was simply a routine traffic stop because somebody didn't have a proper front license plate. Well, I mean, that's certainly. You didn't peep about that. Right, but we, I mean, the parties agree that because the district court didn't address, the merits didn't dismiss for failure to state a claim, that we were focusing on the heck argument. I mean, it would seem because it wasn't briefed below, because it wasn't briefed here, it wouldn't be fair to assert that. But, yeah, I mean, certainly we agree that when you stop. So you're sort of heck or bust. Well, at this stage, I mean, at this stage, certainly if the case did go back, which would be, you know, as I can see it completely contrary to O'Carroll and McCann's reasoning as well, then we would raise the 12B-6. Right. I mean, again, you know, this went down on screening. This is just, yeah, this is just, as I said at the outset, these are statutory claims. They're the Supreme Court's effort to delineate the proper field for habeas corpus, the proper field for 1983, how we work out the timing, how we work out the theories. I don't see anything jurisdictional or constitutional, anything about any of these. No, no. Yeah, nothing jurisdictional. No, again, Your Honor, this case really, it's just, I mean, as I see the reasoning in O'Carroll, it applies absolutely here. The plaintiff in O'Carroll could have raised, could have filed a complaint that escaped the heck bar if he had said either only I have the gems or they stole the gems or they stole the gems and I had drugs. But once he said I have no drugs, they framed me, then that means that his conviction for selling drugs had to be, that was part of his story, so that had to necessarily, if he prevailed on that story, necessarily imply that his conviction for selling drugs was incorrect. But you're taking a statement from the complaint. Suppose in the pretrial order he drops that point, says it really doesn't matter about the gems. Then it's not in the case anymore. Well, in O'Carroll, remember that at the end of O'Carroll they said, you know, this case should never have even gone to trial because it should have gone away at heck at the dismissal stage. Yeah, but that doesn't respond to my point. I mean, that's the same thing that should happen here. I mean, the plaintiff could have alleged that they stopped him, profiled him, they stopped him, and the detention, he had a prolonged detention for the dog. He could have alleged just that, but he didn't allege just that. Let's remember what he alleges. He says, I told Ziegler, this is when Ziegler first says are there drugs in the car. I hope the state is now complying with the Vienna Convention on Consular Relations. I assume it is, Your Honor. We haven't had any complaints so far since the first case. But the plaintiff says, you know, to Ziegler, he alleges, he says to Ziegler, when Ziegler says are there drugs in the car, he says there shouldn't be any drugs. No, we know this. This is all in the briefs, and the state reads this as a bunch of concessions, and he says, no, these are all hedged remarks of one sort or another. Right. Well, he says, I denied, you know, I denied knowledge of the drugs. I denied I know. And then he later pleads guilty, though. He comes back on, and he says, yes, I pleaded guilty. Right, for reasons other than. It doesn't matter. He pleaded guilty. It's a judicial admission. You wouldn't let him withdraw the guilty plea, would you? Well, no, of course not, and that's in federal court, so it wouldn't really affect us. But again, Your Honor, this is really, this is no different from O'Carroll. I mean, it's really not possible to distinguish O'Carroll from this case. All right, we understand that's your theory. I'm sorry? I said I understand that's your theory. But in both cases, I mean, it's not just my theory. It's really true. I mean, you know, when a plaintiff says, you know. It's a fact, not a theory. I'm sorry? Fact, not a theory. Yeah, that's what she's saying. It's right. You have to lose your mind. It's not an alternative fact. It is the theory that applies. I mean, you know, again, O'Carroll stands for the proposition that if. . . O'Carroll. O'Carroll, I'm sorry. Thank you. O'Carroll stands for the proposition that if you add allegations that you're prevailing on them necessarily implies the invalidity of your conviction, then heck bars you. And here his allegations that he had no knowledge of the drugs necessarily imply the invalidity of his conviction. All right. Thank you very much. If there are no more questions, we ask that you affirm. Thank you. All right. Anything further, Mr. Clapp? So in their brief, and I think now on oral argument, it is clear that they do not have any theory that Mr. Morty, if he's successful on his claims about the traffic stop, that that's going to invalidate his conviction. So what do you want to say about their reliance on O'Carroll? In our briefs, we give numerous reasons why their reasoning is wrong, and I don't want to stand here and articulate them all to you. But again, going back to this fundamental point, heck is a case and that heck rule came out of a case deciding what is appropriate for habeas and what is permissible as a 1983 action. Having an allegation and a complaint that has nothing to do with what you ultimately have to prove to prevail on your civil claim doesn't inform the question of is this habeas or not in any way. So the idea that O'Carroll could somehow create a new rule, so now here the rule is not you are barred because what you are bringing is really a habeas claim. The rule apparently is something like, well, you didn't scream to the world I'm guilty, I'm guilty, and therefore we're going to not let you bring a 1983 claim. There's just no basis for that. So we do ask that you reverse and remand to the district board so that the Fourth Amendment claims can proceed, including any motions from the state regarding 12b6. All right. Thank you very much. Thanks for accepting this case. We appreciate it very much. Thanks, of course, as well to the state. We'll take it under advisement. Thank you.